COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Michael T. Zeller (Bar No. 196417)
2    michaelzeller@quinnemanuel.com
     865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
4  Facsimile:  (213) 443-3100

5  Attorneys for Defendant
   Activision Publishing, Inc.

6

7                 UNITED STATES DISTRICT COURT

8                 CENTRAL DISTRICT OF CALIFORNIA

9                         WESTERN DIVISION

10  NO DOUBT, a California Partnership,     CASE NO. CV09- 8872SVW VBKx

11              Plaintiff,                   NOTICE   OF   REMOVAL   OF
                                             ACTION FROM THE SUPERIOR
12        vs.                                COURT  OF  THE  STATE  OF
                                             CALIFORNIA TO THE UNITED
13  ACTIVISION PUBLISHING, INC., a           STATES    DISTRICT    COURT
    Delaware Corporation,                    PURSUANT    TO    28   U.S.C.
14                                           § 1441(b)(FEDERAL QUESTION)
              Defendant.
15                                           (SUPERIOR  COURT  FOR  THE
                                             COUNTY OF LOS ANGELES, CASE
16                                           NO. BC425268)

17                                           Trial Date:  None Set

18

19

20

21

22

23

24

25

26

27

28

22954/3221233.2

                                                        NOTICE OF REMOVAL

1  TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT
2  OF CALIFORNIA:

3         Defendant Activision Publishing, Inc. ("Activision") hereby removes the
4  above-entitled action from the Superior Court of the State of California for the County
5  of Los Angeles in which it is now pending to the United States District Court for the
6  Central District of California. This civil action is removed on the basis of federal
7  question jurisdiction pursuant to 28 U.S.C. § 1441(b).

8         Though No Doubt has attempted to frame this case as a right of publicity
9  and unfair competition case, its own pleading demonstrates that its claims are
10 preempted by copyright law. As No Doubt itself admits at the start of its complaint, the
11 crux of its claims is Activision's copyrighted "Band Hero" videogame "enabling each
12 [No Doubt] member's *'performance'* of over sixty musical works" in the videogame.
13 Complaint, ¶3 (emphasis added). No Doubt, however, signed a license agreement
14 permitting Activision to take pictures of and to motion capture No Doubt in order to
15 include the likenesses of its members in the "Band Hero" videogame (the "Game").
16 Because a videogame is copyrighted expression and because No Doubt expressly
17 permitted its likenesses to be included in the videogame, its right of publicity and unfair
18 competition claims are preempted.

19        No Doubt's reference in its complaint to an ominous sounding "Character
20 Manipulation Feature" does not change the analysis. First, the feature to which No
21 Doubt is referring is a standard videogame feature – the ability for a player to unlock an
22 element of a videogame through a certain act or achievement and then utilize that
23 element in the videogame. The particular "unlockable" feature raised by No Doubt –
24 the ability to unlock a character and then utilize that character to sing or otherwise
25 perform other songs available in a particular game – has been a feature included in
26 "Guitar Hero" games, games that have sold over 40 million units, since the first version
27 of "Guitar Hero" released in 2005. Second, the fact that the No Doubt in-game
28 characters are unlockable is irrelevant to the copyright preemption analysis. Those

1   characters, whichever song or motions they are performing at any particular time in the
2   Game, are the No Doubt likenesses that No Doubt approved for inclusion in the Game.
3   As such, No Doubt's right of publicity and unfair competition claims are preempted.

4          What this case boils down to is not a violation of the right of publicity, but
5   rather No Doubt's failure to request that their grant of rights to Activision be limited to
6   use of their likenesses *only in connection with No Doubt songs*. With sophisticated
7   management and legal representation, extensive contract negotiations and meeting to go
8   over any and all questions about the Game, No Doubt had every opportunity to request
9   that the broad grant of rights to Activision be restricted. As No Doubt acknowledges,
10  the representatives for another artist in a previous game asked for, and received, a more
11  limited license. But No Doubt's representatives did not timely request that their grant
12  of rights be limited in this way. Instead, No Doubt's management first made such a
13  request in mid-September 2009. By then, the Game programming had been finalized, it
14  had been submitted to all of the U.S. console manufacturers for approval and had been
15  approved for manufacture by most console manufacturers, and it was being readied for
16  imminent shipment to retailers for the busy holiday season.

17         Because the gravamen of No Doubt's right of publicity and unfair
18  competition claims hinges on the inclusion of likenesses photographed and captured
19  with No Doubt's consent in the copyrighted Game, the right of publicity claim is
20  preempted by copyright law and thus this case is being removed to this Court. More
21  specifically, the grounds for removal are as follows:

22         1.      Activision has been named as the defendant in a civil action brought
23  in the Superior Court of the State of California for the County of Los Angeles
24  encaptioned No Doubt v. Activision Publishing, Inc., Case No. BC425268 (the
25  "Action"). There are no other named defendants. The Action was filed November 4,
26  2009. A true and correct copy of the summons and complaint in the Action are
27  attached as Exhibit 1. Exhibit 1 hereto constitutes all process and pleadings with which
28  Activision has been served regarding the Action.

1    2.    The complaint in the Action alleges, *inter alia*, violation of
2  California Business and Professions Code §§ 17200, *et seq.* and California Civil Code
3  § 3344.

4    3.    This Notice of Removal is timely as required by 28 U.S.C.
5  § 1446(b) because it is filed not more than one year following the commencement of
6  the Action and within thirty days of service of the summons and complaint on
7  Activision, the only named defendant.

8    4.    No Doubt's claims concern Activision's Game, which is a part of its
9  "Guitar Hero" series of games. The Game allows players to pretend that they are a
10 character performing in a rock band in time with popular songs. Players choose among
11 options such as character and whether to perform by singing, playing guitar or playing
12 drums. The character options in the Game include both fictional characters or avatars
13 of real-life performers.  In the Game, the avatars of real-life performers include
14 members of No Doubt, Taylor Swift and Adam Levine. All told, the disk of the Game
15 features 65 songs (by many different artists) and numerous characters (both fictional
16 and real-life) to enhance the game-play experience. In certain game modes, once the
17 user chooses a character, mode of play and/or song, the user plays as the selected
18 character along with the song to win points. In the case of simulated guitar play, for
19 example, the user wins points by correctly timing the pressing of fret buttons and a
20 strum bar on a guitar-like controller. In the case of simulated vocal play, the user
21 accumulates points by singing into a microphone-like controller and correctly matching
22 his or her vocals to such characteristics of the song as pitch and timing.

23    5.    Pursuant to a Professional Services and Character License
24 Agreement dated as of May 21, 2009 (the "Agreement") (attached to the Complaint as
25 Exhibit A), No Doubt granted Activision the non-exclusive, worldwide right and
26 license to use, among other properties, its members' likenesses and names for the
27 Game. Agreement, ¶ 5.1. So that their likenesses could be used to create their in-game
28 characters, among other things, members of No Doubt agreed to participate (and did

1    participate) in production services "for the purposes of photographing and scanning
2    Artist's likeness, and capturing Artist's motion-capture data." Agreement, ¶ 2.1.1. No
3    Doubt has admitted that its members appeared for motion capture filming so that their
4    avatar characters could simulate performances in the Game.   Complaint at ¶ 14.
5    Activision is the copyright owner of the Game, as well as No Doubt performances that
6    were filmed, which include "all digitized images and models" made of No Doubt's
7    members and "all motion data" captured as part of the production services. Agreement,
8    ¶ 5.2.1.

9          6.      The gravamen of No Doubt's complaint is that because certain users
10   of the Game are unable to "unlock" its members' in-game characters and then choose to
11   play songs performed by other artists using their characters, the copyrighted Game
12   violates their rights under state laws that include <u>California Business and Professions</u>
13   <u>Code</u> §§ 17200, *et seq.* and <u>California Civil Code</u> § 3344. Notably, all of the real-life
14   characters in the Game function the same way as the No Doubt characters. They can all
15   be unlocked and then selected to play songs performed by other artists.

16         7.      Removal is proper under the federal Copyright Act, 17 U.S.C.
17   §§ 101, *et seq.* This Court has original jurisdiction over this Action pursuant to 28
18   U.S.C. §§ 1331 and 1338(a) because the complaint alleges claims that are preempted
19   under the Copyright Act. *See* 28 U.S.C. § 1338(a) (federal courts have exclusive
20   jurisdiction over copyright claims). Removal is proper when federal law preempts a
21   state claim. *See, e.g., Franchise Tax Board v. Construction Laborers Vacation Trust*,
22   463 U.S. 1, 27-28 (1983); *Santa-Rosa v. Combo Records,* 471 F. 3d 224, 227 (1st Cir.
23   2006); *Rosciszewski v. Arete Assocs.,* 1 F.3d 225, 230-31 (4th Cir. 1993); *Ehat v.
24   Tanner*, 780 F.2d 876, 878 (10th Cir. 1985).

25         8.      Section 301 of the Copyright Act "expressly prohibits states from
26   legislating in the area of copyright law." *Fleet v. CBS Inc.*, 50 Cal. App. 4th 1911,
27   1918 (1996); *see also* 17 U.S.C. § 301(a); 28 U.S.C. § 1338(a). "When state law
28   touches upon the area of these federal statutes it is 'familiar doctrine' that the federal

22954/3221233.2

-4-

1 policy 'may not be set at naught, or its benefits denied' by the state law." *Sears,*
2 *Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 229 (1964) (internal citations omitted).

3        9.   As a general rule, state law claims requiring proof of "extra
4 elements" beyond those required to prove copyright infringement are not barred by
5 copyright preemption. To avoid preemption, however, the extra elements must
6 "transform the nature of the action." *Laws v. Sony Music Entertainment, Inc.,* 448
7 F.3d 1134, 1144 (9th Cir. 2006). In other words, the state law claims must "afford
8 plaintiff rights that are 'different in kind' from those protected by the copyright laws."
9 *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 501 F. Supp. 848, 853-54
10 (S.D.N.Y. 1980), *rev'd on other grounds,* 471 U.S. 539 (1985).

11       10.   On the other hand, a state law claim *is* preempted by the federal
12 Copyright Act if (1) the rights that the plaintiff asserts under state law are "equivalent"
13 to those protected by the Copyright Act and (2) the work involved falls within the
14 "subject matter" of the Copyright Act. *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209,
15 1212 (9th Cir. 1998). A cause of action is preempted "if it does not require an element
16 beyond 'mere copying, preparation of derivative works, performance, distribution or
17 display." *Santa Rosa v. Combo Records,* 471 F.3d 224, 226 (1st Cir. 2006), *citing Data*
18 *General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1164 (1st Cir. 1994)
19 (quoting *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 847 (10th
20 Cir. 1993)).

21       11.   A plaintiff may not circumvent federal jurisdiction by pleading a
22 copyright infringement claim as arising under state law; otherwise "the preemption
23 provision would be useless, and the policies behind a uniform Copyright statute would
24 be silenced." *Daboub v. Gibbons,* 42 F.3d 285, 290 (5th Cir. 1995). *See also Dielsi v.*
25 *Falk,* 916 F. Supp. 985, 993 (C.D. Cal. 1996) (Copyright Act preempted plaintiff's state
26 law claims that came within the subject matter of copyright law and protected rights
27 akin to the exclusive rights protected under copyright law).

28

1          12.     The Game is a copyright protected audiovisual work owned by
2   Activision that is fixed in a tangible medium of expression from which it can be
3   perceived, reproduced or otherwise communicated, either directly or with the aid of a
4   machine or device. *See* 17 U.S.C. § 102(a)(6); *Kodadek v. MTV Networks, Inc.*, 152
5   F.3d 1209, 1212 (9th Cir. 1998). It accordingly comes within the subject matter of the
6   Copyright Act. *Midway Mfg. Co. v. Artic Intern. Inc.*, 704 F.2d 1009, 1012 (7th Cir.
7   1983) ("We thus conclude that video games are copyrightable as audiovisual works
8   under the 1976 Copyright Act and we note that every other federal court (including our
9   own) that has confronted this issue has reached the same conclusion."); *see also M.*
10  *Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 436 (4th Cir. 1986) ("video games are
11  copyrightable"); *Stern Electronics, Inc. v. Kaufman*, 669 F.2d 852, 856 (2d Cir. 1981)
12  (same); *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 139 (D.N.J. 1982)
13  ("It is also unquestionable that video games in general are entitled to copyright
14  protections as audiovisual works").

15          13.     Although No Doubt asserts claims against Activision under the
16  guise of state law, those claims are based on rights equivalent to those protected by, and
17  are otherwise in conflict with, federal copyright laws. Among other things:

18          (a)     No Doubt alleges that its purported state law rights are
19  violated by a player's use of its members' in-game characters to perform songs by other
20  artists as part of playing the Game. As No Doubt concedes, its members "appeared for
21  motion capture" of their likeness, performances and movements for the purpose of
22  creating their in-game characters -- or, as No Doubt puts it, "so that No Doubt's avatar
23  characters could simulate a lifelike performance" in the Game. Complaint, ¶ 14; *see*
24  *also* Agreement, ¶ 2.1.1 (members of No Doubt agreeing to participate in production
25  services "for the purposes of photographing and scanning Artist's likeness, and
26  capturing Artist's motion-capture data."). Indeed, the crux of No Doubt's claims,
27  repeated throughout the complaint, is that the alleged violation of their state law rights
28  stems from "a feature *in Band Hero* that allows a game-player to manipulate No

22954/3221233.2

-6-

1 │ Doubt's character likeness to perform over sixty additional musical works". Complaint,

2 │ ¶ 16 (emphases altered).[1] No Doubt thus claims that the alleged misappropriation of its

3 │ name and its members' likenesses and performances is contained entirely within the

4 │ copyrighted medium of the Game. As a consequence, state law rights No Doubt asserts

5 │ are equivalent to those protected by the Copyright Act, and No Doubt's state law claims

6 │ are preempted. *Laws*, 448 F.3d at 1141 ("Although California law recognizes an

7 │ assertable interest in the publicity associated with one's voice, we think it is clear that

8 │ federal copyright law preempts a claim alleging misappropriation of one's voice when

9 │ the entirety of the allegedly misappropriated vocal performance is contained within a

10 │ copyrighted medium."); *Baltimore Orioles, Inc. v. Major League Baseball Players*

11 │ *Ass'n*, 805 F.2d 663, 674-79 (7th Cir. 1980) (players' right-of-publicity claims in

12 │ baseball telecasts held preempted by Copyright Act).[2]

13

14

---

15 │ [1] *See also, e.g.*, Complaint ¶ 20 (alleging use of band members' "likenesses in the

16 │ Character Manipulation Feature"), ¶ 22 ("the Character Manipulation Feature results in

17 │ an unauthorized performance"), ¶ 23 (alleging that band member Tony Kanal's
   │ character can be "manipulated" "in the game"), ¶ 26 (alleging purported harm from "the

18 │ use of No Doubt's name and likeness for the Character Manipulation Feature"), ¶ 38

19 │ (alleging "the unauthorized commercial use of No Doubt's name, performance and
   │ likeness for the Character Manipulation Feature"), ¶ 48 (alleging "use of [No Doubt's]

20 │ name and likeness for the Character Manipulation Feature of *Band Hero*").

21 │ [2] *See also Muller v. Walt Disney Productions*, 871 F. Supp. 678 (S.D.N.Y. 1994)
   │ (dismissing claims for misappropriation, conversion and unjust enrichment because

22 │ they were premised on the contention that the plaintiff had ownership rights in a

23 │ copyrighted performance); *Brown v. 20th Century Fox Film Corp.*, 799 F. Supp. 166,
   │ 172 (D.D.C. 1992), *aff'd* 15 F.3d 1159 (D.C. Cir. 1994) (holding that James Brown's

24 │ claim that a clip of his performance of a song was used in a motion picture without

25 │ permission did not violate his right of publicity and explaining that "[b]ecause
   │ defendants lawfully acquired the right to use the [television] Show performance . . . the

26 │ alleged violation of the right of publicity cannot be based on their use of that

27 │ performance"); *Rooney v. Columbia Pictures Industries, Inc.*, 538 F. Supp. 211
   │ (S.D.N.Y. 1982) (holding that actor Mickey Rooney could not assert a right of publicity

28 │ (footnote continued)

1               (b)    Furthermore, No Doubt seeks to interfere with Activision's

2 distribution of, and other exploitation of rights in and to, its copyrighted Game. The

3 complaint's request for injunctive relief specifically targets Activision's copyrighted

4 Game and avowedly seeks to interfere with "all distributed versions of *Band Hero*."

5 Complaint, ¶ 53. As a consequence, state law rights No Doubt asserts are equivalent to

6 those protected by the Copyright Act, and No Doubt's state law claims are preempted.

7 *Fleet v. CBS Inc.*, 50 Cal. App. 4th 1911, 1920 (1996) (holding that the distribution of a

8 motion picture over the objection of unpaid artists did not violate either their publicity

9 rights or Cal. Bus. & Prof. Code § 17200 and explaining that "if all [the plaintiffs] are

10 seeking is to prevent a party from exhibiting a copyrighted work they are making a

11 claim 'equivalent to an exclusive right within the general scope of copyright'").

12             14.    The Court has supplemental jurisdiction over the remaining claims.

13 *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original

14 jurisdiction, the district courts shall have supplemental jurisdiction over all other claims

15 that are so related to the claims in the action within such original jurisdiction that they

16 form part of the same case or controversy."); *see also Geospan Corp.,* 2002 WL

17 1587219, at *2 ("[t]he fact that [a] claim might also be actionable under state law

18 prohibitions against 'unfair competition' does not alter its federal character." (citation

19 omitted)).

20             15.    Because the United States District Court for the Central District of

21 California, Western Division, embraces the place where No Doubt's action was

22 pending, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

23             16.    All other procedural requirements for removal have been satisfied.

24 The sole named defendant, Activision, consents to removal. This notice of removal is

25 accompanied by a true and correct copy of all pleadings and orders on file in the

26

27 claim based on the performance of copyrighted motion pictures on cable television and
their distribution via video cassette).

28

1  Superior Court. 28 U.S.C. § 1446(a). A notice of filing of removal, with a copy of this
2  notice of removal attached, is being served on No Doubt and filed with the Superior
3  Court. 28 U.S.C. § 1446(d).

4

5  DATED: December 2, 2009          QUINN EMANUEL URQUHART OLIVER &
6                                   HEDGES, LLP

7

8                                   By _Michael Zeller/Ove_____
9                                      Michael T. Zeller
10                                     Attorneys for Defendant
                                       Activision Publishing, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ACTIVISION PUBLISHING, INC., a Delaware Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NO DOUBT, a California Partnership,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

NOV 04 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DAWN ALEXANDER

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles County Superior Court
111 N. Hill St.
Los Angeles, CA 90012
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):* **BC 4 2 5 2 6 8**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BERT H. DEIXLER, SBN 70614        310-557-2900      310-557-2193
GIL N. PELES, SBN 238889
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200, Los Angeles, CA 90067

DATE: JOHN A. CLARKE, CLERK      DAWN ALEXANDER , Deputy
*(Fecha)*                                                         *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons, (POS-010)).
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

Exhibit 1
Page 10

1    PROSKAUER ROSE LLP
     BERT H. DEIXLER, SBN 70614
2    GIL N. PELES, SBN 238889
     2049 Century Park East
3    32nd Floor
     Los Angeles, California 90067-3206
4    Telephone:    (310) 557-2900
     Facsimile:      (310) 557-2193
5

6    Attorneys for Plaintiff
     No Doubt, a California Partnership
7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

NOV 04 2009

John A. Clarke, Executive Officer/Clerk
By _____ , Deputy
        DAWN ALEXANDER

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES

10

11    NO DOUBT, a California Partnership,      )    Case No.    **BC 42 52 68**

12             Plaintiff,      )    **COMPLAINT FOR:**

13            v.      )    1.    **FRAUDULENT**
                                   **INDUCEMENT;**

14    ACTIVISION PUBLISHING, INC.,
15    a Delaware Corporation,      )    2.    **VIOLATION OF**
                                 **CALIFORNIA CIVIL CODE**
16             Defendant.      )       **§ 3344 AND COMMON LAW**
                                 **RIGHT OF PUBLICITY;**

17                            3.    **BREACH OF CONTRACT;**

18                            4.    **UNFAIR BUSINESS**
19                                  **PRACTICES (Cal. Bus. & Prof.**
                                 **Code § 17200);**

20                            5.    **INJUNCTIVE RELIEF; and**

21                            6.    **RESCISSION**

22

23

24

25

26                              **[JURY TRIAL DEMANDED]**

27

28

3260/53928-004
Current/16253333v11

**COMPLAINT**

Exhibit 1
Page 11

1    Plaintiff No Doubt ("No Doubt"), for its claims against Defendant Activision Publishing,

2    Inc. ("Activision"), alleges upon knowledge with respect to its own acts, and upon information

3    and belief as to all other matters, as follows:

4    **I.    SUMMARY OF THE DISPUTE**

5    1.    This is an action to enjoin and obtain redress for Activision's unauthorized and

6    improper exploitation of the name, performances and likenesses of No Doubt, an internationally

7    renowned musical group, in an attempt to boost the sales of Activision's flagship video game

8    franchise, *Guitar Hero*.

9    2.    In violation of an express written contract with No Doubt, Activision created in a

10   new version of *Guitar Hero*, titled *Band Hero*, the ability to have lifelike embodiments of No

11   Doubt and its individual band members sing, dance and perform over sixty songs that were neither

12   contracted for nor approved of, and have never been performed, by No Doubt.

13   3.    Specifically, Activision transformed No Doubt band members into a virtual

14   karaoke circus act by enabling each member's "performance" of over sixty musical works, many

15   of which include lyrics, contained in iconic songs, which are not appropriate for No Doubt and

16   have not been and would not have been chosen by No Doubt for recordings or public

17   performances. In addition to forcing unwanted performances upon No Doubt in excess of the

18   granted license, Activision also included a feature to cause members of No Doubt to perform

19   vocally as soloists without their band members, including having male members sing with female

20   voices. The feature also allows game-players to fully manipulate each character's likeness to

21   engage in unapproved acts with other characters included in the game. Activision also included a

22   feature to cause the female lead singer of No Doubt, Gwen Stefani, to perform unapproved songs

23   in voices other than her own, including male voices. Activision actively concealed its intent to use

24   the likenesses and performances of No Doubt's members in such a manner and, when Activision

25   was told that these uses were not permitted by the contract and not approved by the band,

26   Activision refused to correct its actions. An Activision executive asserted that doing so would be

27   "too expensive" and would jeopardize their revenue.

28

8260/53928-004
Current/16253333v11

**COMPLAINT**

Exhibit 1

Page 12

1    4.    Activision's concern for its own financial interest over the personal and

2    professional harm to the members of No Doubt and its concealment of its secret intention to

3    ignore its written contract, constitutes fraudulent inducement, materially breaches the agreement

4    between the parties, infringes upon No Doubt's right of publicity, and violates California Business

5    and Professions Code section 17200.  No Doubt has worked hard for over two decades to build

6    and maintain its image and accumulate a considerable amount of goodwill in the eyes of the

7    public.  Activision's malicious conduct has and will continue to irreparably harm No Doubt and its

8    reputation, business and goodwill.

9    II.    PARTIES, JURISDICTION AND VENUE

10    5.    No Doubt is a musical group and a partnership organized and existing under the

11    laws of the State of California with its principal place of business in Los Angeles, California.

12    6.    Activision is a corporation organized and existing under the laws of the State of

13    Delaware with its principal place of business in Santa Monica, CA.

14    7.    The parties have agreed to this Court's jurisdiction.  On May 21, 2009, the parties

15    entered into an agreement (the "Agreement").  A true and correct copy of the Agreement, redacted

16    only as to the compensation term, is attached as Exhibit A.  The Agreement expressly provided:

17        The substantive laws of California shall apply to this Agreement, and the parties

18        consent to the exclusive jurisdiction of the courts in Los Angeles County.

19    Agreement, Paragraph 10.3.

20    III.    FACTS COMMON TO ALL CLAIMS

21    8.    No Doubt has achieved international renown as a successful music band.  Equally

22    well known to No Doubt's fans are the limitations that No Doubt imposes upon endorsements or

23    sponsorships entered into by the band.  No Doubt has maintained its highly regarded reputation by

24    carefully restricting the use of its name and likeness and in carefully choosing the songs it

25    performs, including songs initially recorded by others that it will perform or "cover."  In twenty-

26    three years the band has only released ten very specifically selected cover songs.  All other songs

27    the band has recorded have been written, in whole or in part, by members of the band.  The artistic

28    judgment of when, where and how No Doubt will publicly appear has contributed to its

1  professional success and career longevity. No Doubt never agreed to allow Activision to

2  substitute its judgment for No Doubt's regarding the public image of No Doubt and its members

3  and therefore required that the Agreement contain express limitations and approval requirements.

4      9.      Activision is a video game developer and publisher. Activision's best selling

5  products are the *Guitar Hero* series of video games, which involve the use of a guitar-shaped

6  joystick controller to simulate the playing of lead, bass guitar and rhythm guitar within virtual

7  rock music bands. The *Guitar Hero* series is among the top selling video game franchises in

8  history, reportedly selling more than 25 million units worldwide and earning over $2 billion.

9      10.     The most recent versions of *Guitar Hero* involve the use of lifelike character

10  representations, or "avatars," some of which depict famous musicians. Through the use of these

11  avatars, game-players can conduct virtual concert performances by the famous musicians

12  represented by these avatars.

13  **Activision's Unauthorized Manipulation of No Doubt's *Band Hero* Character Likeness**

14      11.     On May 21, 2009, No Doubt and Activision entered into the Agreement whereby

15  No Doubt licensed Activision a specific, limited and restricted use of No Doubt's name, likeness,

16  and musical works in a new release of *Guitar Hero*, titled *Band Hero*. As part of the Agreement,

17  No Doubt permitted Activision to create avatar characters of No Doubt's likeness for the limited

18  purpose of allowing the characters to perform three (3) of No Doubt's own musical works within

19  the video game. The Agreement expressly provided for No Doubt's approval of proposed uses of

20  No Doubt's songs and likeness.

21      12.     The Agreement only allowed the use of No Doubt's name and likeness as a

22  collective group, and did not permit the separate use of any individual band member's name or

23  likeness. According to the Agreement:

24          It is specifically acknowledged and agreed that the rights granted herein relate

25          solely to the group "No Doubt" and not the individual members' activities apart

26          from the group.

27  Agreement, Paragraph 1.1.

28

8260/53928-004
Current/16253333v

- 3 -

1     13.    As part of the Agreement, No Doubt permitted Activision to use no more than

2 three of No Doubt's musical works in *Band Hero* for use with No Doubt's avatar characters. The

3 Agreement required that Activision obtain No Doubt's express approval prior to the use of each

4 song. According to the Agreement:

5     Activision shall use commercially reasonable efforts to license no more than three

6     (3) [No Doubt] songs (master/composition) for incorporation and use in the

7     Game. [No Doubt] shall have approval over the songs to be used, not to be

8     unreasonably withheld.

9 Agreement, Paragraph 4.

10    14.    As required by the Agreement, No Doubt appeared for motion capture filming of

11 three of its musical works so that No Doubt's avatar characters could simulate a lifelike

12 performance of the three songs.

13    15.    The Agreement also required Activision to obtain No Doubt's written approval

14 prior to *any* use of No Doubt's name or likeness in *Band Hero*. According to the Agreement:

15     Artist's likeness as implemented in the Game (the "Character Likeness"), *any* use

16     of Artist's name and/or likeness other than in a "billing block" fashion on the

17     back of the packaging for the Game, and the b-roll and photography *or other*

18     *representation of the Services or of Artist, shall be subject to Artist's prior*

19     *written approval.*

20 Agreement at Paragraph 6.1 (emphasis added).

21    16.    Without No Doubt's knowledge or permission, and indeed when discovered over

22 its protest, and in breach of the Agreement, Activision included a feature in *Band Hero* that allows

23 a game-player to manipulate No Doubt's character likenesses to perform over *sixty* additional

24 musical works that are not associated with, have never been performed by, and were never

25 approved by No Doubt (the "Character Manipulation Feature").

26    17.    The Character Manipulation Feature allows a game-player to create awkward and

27 distorted virtual performances by No Doubt's avatar characters of musical works in genres not

28

1  associated with, and never performed by, No Doubt, certain of which contain lyrics that are

2  potentially harmful to the reputation and public persona of No Doubt.

3      18.    The Character Manipulation Feature also allows a game-player a wide-range of

4  control over the movement of No Doubt's avatar characters, including the ability to cause the

5  characters to engage in unrealistic, and unapproved, movements and dances.

6      19.    The Character Manipulation Feature further allows each member of No Doubt to

7  appear as solo artists performing entirely apart from the other members.

8      20.    The Character Manipulation Feature, although obviously known to Activision, was

9  not disclosed to No Doubt before it entered into the Agreement and was not authorized under the

10  Agreement. No Doubt would not have entered into the Agreement had it known of Activision's

11  intent to use its likenesses in the Character Manipulation Feature. Activision chose to conceal the

12  additional exploitation of No Doubt's name, performance and likenesses in order to advance its

13  own commercial purposes.

14      21.    On information and belief, without No Doubt's knowledge, Activision hired actors

15  to impersonate No Doubt so that it could create unapproved representations of No Doubt's

16  performances of the unauthorized additional musical works.

17      22.    For example, the Character Manipulation Feature contains a representation of

18  Gwen Stefani, the lead singer of No Doubt, a world renown performer in her own right,

19  performing, without her approval, the song "Honky Tonk Woman"[1] by the Rolling Stones. While

20  No Doubt are avid fans of the Rolling Stones and even have performed in concerts with the

21  Rolling Stones, the Character Manipulation Feature results in an unauthorized performance by the

22  Gwen Stefani avatar in a male voice boasting about having sex with prostitutes in lyrics such as:

23      I met a gin soaked, bar-room queen in Memphis.

24      She tried to take me upstairs for a ride.

25      She had to heave me right across her shoulder,

26      cause I just cant seem to drink you off my mind.

27

28      [1] © 1969 Mick Jagger, Keith Richards and ABKCO Music, Inc.

1    . . .

2    I laid a divorcee in New York City.

3    I had to put up some kind of a fight,

4    The lady then she covered me with roses.

5    She blew my nose and then she blew my mind.

6    23.    In another example, the Character Manipulation Feature allows the avatar character

7    of No Doubt bassist Tony Kanal to individually appear to sing, in a female voice, No Doubt's

8    musical works even though Mr. Kanal never provided the lead vocals to any musical works during

9    the motion capture filming with Activision, and indeed has never performed as a lead vocalist of

10   the group. However, in the game his avatar character can be manipulated to provide the lead

11   vocals in a woman's voice, to No Doubt's musical work "Just a Girl"[1] including the following

12   lyrics:

13       Oh I'm just a girl, Guess I'm some kind of freak.

14       'Cause they all sit and stare with their eyes.

15       Oh I'm just a girl.  Take a good look at me.

16       Just your typical prototype.

17   24.    On information and belief, Activision was aware that its contract did not permit the

18   use to which No Doubt and its members are subject, as Activision sought written permission from

19   other famous musicians whose avatar characters appear in *Guitar Hero* to use their names and

20   likenesses for the Character Manipulation Feature but nonetheless failed to seek such permission

21   from No Doubt.

22   25.    Activision's President and Chief Executive Officer Dan Rosensweig has admitted

23   that Activision is fully capable of disabling the Character Manipulation Feature relating to No

24   Doubt, but refuses to do so in order to commercially exploit No Doubt's name and likeness for its

25   own financial interest.  Indeed, Mr. Rosensweig admitted that Activision has disabled the

26

27       [1] © 1995 Crazy Velcro Music, Knock Yourself Out Music, MCA Music Publishing, and
28   Music Corporation of America

1  Character Manipulation Feature relating to musician Jimi Hendrix at the request of the Hendrix

2  estate.

3      26.     Through the use of No Doubt's name and likeness for the Character Manipulation

4  Feature, Activision has deceived No Doubt's fans, harmed No Doubt and its members'

5  reputations, business and goodwill, and deprived No Doubt of the benefits specifically negotiated

6  and due to it under the Agreement.

7              **FIRST CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT**

8      27.     No Doubt incorporates by reference paragraphs 1 through 26, as though fully set

9  forth.

10     28.     Prior to and after executing the Agreement, Activision represented to No Doubt

11 that its name and likeness would only be used in conjunction with three selected No Doubt songs

12 within *Band Hero*. At the same time, Activision concealed its plan to use No Doubt's name and

13 likeness for the Character Manipulation Feature.

14     29.     Upon information and belief, Activision's failure to disclose the Character

15 Manipulation Feature was made with an intent to defraud No Doubt by inducing it to enter into the

16 Agreement and cooperate for the motion capture filming of its likeness.

17     30.     Upon information and belief, Activision knew that its nondisclosure and

18 suppression of the Character Manipulation Feature would mislead No Doubt and induce it into

19 entering into the Agreement. Activision knew that No Doubt would not agree to allow itself, and

20 its individual members appearing as solo artists, to "cover" songs of other artists, without No

21 Doubt's approval, especially songs in genres inconsistent with No Doubt's image or with

22 inappropriate lyrics.

23     31.     Activision's intention to create the Character Manipulation Feature was concealed

24 and could not have been known by No Doubt until the release of *Band Hero*. Indeed in the

25 exchange of hundreds of emails regarding No Doubt's appearance as an avatar, and in many

26 communications with No Doubt, representatives of Activision never revealed its secret intention to

27 permit the manipulation of the No Doubt avatars and have No Doubt's band members perform

28

1    inappropriately, harmfully and in an unapproved fashion.  No Doubt would never have entered

2    into the Agreement if it had known of Activision's acts and intentions.

3         32.    Upon information and belief, during negotiations with No Doubt, the following

4    Activision executives actively concealed the Character Manipulation Feature from No Doubt:

5              A.    Tim Riley, Vice President

6              B.    Scott McDaniel, Music Supervisor

7    The acts of these executives have been ratified and approved by Activision.

8         33.    As a proximate result of Activision's fraud, No Doubt has been damaged in its

9    image, reputation and business in an amount which shall be proved at trial.

10        34.    The acts of Activision as alleged herein were committed with malice, oppression

11   and fraud, and therefore justify the award of exemplary and punitive damages in an amount which

12   shall be proved at trial.

13   **SECOND CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE**

14   **§ 3344 AND COMMON LAW RIGHT OF PUBLICITY**

15        35.    No Doubt incorporates by reference paragraphs 1 through 34, as though fully set

16   forth.

17        36.    Through its talents and hard work in the entertainment field, No Doubt's name,

18   performance and likeness are of substantial commercial value and possess considerable goodwill

19   in the eyes of the public (in particular in the eyes of purchasers of recorded music, concert tickets

20   and merchandise) and advertisers.  No Doubt's name and likeness convey a message of artistic

21   integrity and a commitment to certain types of music, fashion and social viewpoints.

22        37.    No Doubt never agreed to allow the use of its name and likeness for the Character

23   Manipulation Feature of *Band Hero*.  Indeed, the agreement prohibits use of the No Doubt songs

24   or avatars without the prior written consent of No Doubt.

25        38.    Activision has knowingly misappropriated No Doubt's name, performance and

26   likeness for commercial purposes, including the unauthorized commercial use of No Doubt's

27   name, performance and likeness for the Character Manipulation Feature.  No Doubt has not

28   consented to such commercial use of its name, performance and likeness and indeed, has

1 | demanded that Activision remove or "lock" the feature. Activision has refused No Doubt's

2 | request, announcing that, while technologically possible and having done so for other artists, it is

3 | "too expensive" to do so for No Doubt.

4 |     39.     The acts alleged above constitute a violation of California Civil Code § 3344 and

5 | No Doubt's common law right of publicity.

6 |     40.     As a direct and proximate result of Activision's acts alleged above, No Doubt has

7 | been damaged in an amount which shall be proved at trial. No Doubt is also entitled to profits

8 | attributable to Activision's unauthorized use of its name and likeness.

9 |     41.     Pursuant to Civil Code § 3344(a), No Doubt is entitled to recover reasonable

10 | attorneys' fees.

11 |     42.     Upon information and belief, Activision has engaged in the conduct alleged above

12 | with oppression, fraud and malice. Accordingly, No Doubt is entitled to an award of punitive

13 | damages against Activision in an amount which shall be proved at trial.

14 | **THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT**

15 |     43.     No Doubt incorporates by reference paragraphs 1 through 42, as though fully set

16 | forth.

17 |     44.     No Doubt has fully performed all acts, covenants and conditions to be performed

18 | on its part as required under the Agreement, except as such performance was prevented or excused

19 | by the conduct of Activision.

20 |     45.     Activision breached the Agreement, as alleged above, by its unpermitted use of No

21 | Doubt's name and likeness for the Character Manipulation Feature of *Band Hero*.

22 |     46.     As a proximate result of Activision's breach of the Agreement, No Doubt has

23 | suffered damages in an amount which shall be proved at trial, plus attorneys' fees and costs, and

24 | legal interest.

25 | / / /

26 | / / /

27 | / / /

28 | / / /

## FOURTH CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES

### (CAL. BUS. & PROF. CODE § 17200)

47. No Doubt incorporates by reference paragraphs 1 through 46, as though fully set forth.

48. Activision has deceived and confused the public into believing that No Doubt authorized the use of its name and likeness for the Character Manipulation Feature of *Band Hero* and that No Doubt approves and endorses the appearance of its members individually performing songs that are wholly inappropriate and out of character for No Doubt. Activision's acts, alleged above, constitute unfair competition in that they reflect unfair, fraudulent, deceptive, and misleading business acts within the meaning of Business and Professions Code § 17200.

49. Upon information and belief, Activision has performed the acts alleged above with the intent to injure No Doubt and members of the public.

50. As a direct and proximate result of Activision's conduct, Activision has unfairly and wrongfully obtained and must disgorge profits belonging to No Doubt in an amount which shall be proved at trial.

51. Upon information and belief, Activision's conduct has caused, and unless enjoined by the court, will continue to cause, irreparable injury and other damage to the public, No Doubt and its business, reputation and good will. No Doubt has no adequate remedy at law.

### FIFTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF

52. No Doubt incorporates by reference paragraphs 1 through 51, as though fully set forth.

53. No Doubt is entitled to a temporary restraining order, a preliminary injunction and a permanent injunction enjoining Activision from using or permitting others to engage in the unauthorized use of No Doubt's name and likeness for the Character Manipulation Feature of *Band Hero*, including an order that Activision recall all distributed versions of *Band Hero*.

54. Activision's action, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to No Doubt, as it continues to use No Doubt's name and likeness in a manner that is disparaging to No Doubt, thereby damaging No Doubt's reputation.

1    55.    No Doubt has no adequate remedy at law for the injuries that are threatened and

2    certain to occur. It is extremely difficult for No Doubt to ascertain the precise amount of damages

3    that it will suffer if Activision is not restrained.

4                     **SIXTH CAUSE OF ACTION FOR RESCISSION**

5    56.    No Doubt incorporates by reference paragraphs 1 through 55, as though fully set

6    forth.

7    57.    Prior to executing the Agreement, Activision represented to No Doubt that its name

8    and likeness would only be used in conjunction with three selected No Doubt songs within *Band*

9    *Hero*. At the same time, Activision concealed its plan to use No Doubt's name and likeness for

10    the Character Manipulation Feature.

11    58.    No Doubt actually and reasonably relied on these false representations and

12    omissions in entering into the Agreement.

13    59.    Activision fraudulently induced No Doubt into forming the Agreement, and,

14    therefore, No Doubt is entitled to rescission of the Agreement pursuant to California Civil Code

15    § 1689(1).

16    60.    By service of this Complaint on Activision, No Doubt hereby provides notice under

17    Cal. Civil Code § 1691 of its right to rescind the Agreement.

18    WHEREFORE, No Doubt prays for judgment against Activision as follows:

19    1.    An order requiring Activision to account for and disgorge profits obtained as a

20    result of its acts of misappropriation and unfair business practices, together with interest;

21    2.    For a temporary restraining order, a preliminary injunction, and a permanent

22    injunction, all enjoining Activision from permitting the unauthorized use of the No Doubt's name

23    and likeness for the Character Manipulation Feature of *Band Hero*.

24    3.    For rescission of the Agreement;

25    4.    Damages;

26    5.    Exemplary and punitive damages;

27    6.    Prejudgment interest;

28

1        7.    Costs of suit incurred herein, including attorneys' fees pursuant to the Agreement

2    and Civil Code § 3344(a); and

3        8.    Such other relief as the Court may deem just and proper.

5    Dated: November 3, 2009

                        PROSKAUER ROSE LLP
                        BERT H. DEIXLER
                        GIL N. PELES

                        BERT H. DEIXLER
                        Attorneys for Plaintiff
                        No Doubt

8260/53928-004
Current/16253333v

- 12 -

**COMPLAINT**

Exhibit 1

Page 23

EXHIBIT A

Exhibit 1
Page 24



3100 Ocean Park Boulevard
Santa Monica, California 90405
Tel: 310.255.2000
Fax: 310.255.2152
www.activision.com

| | |
|---|---|
| Party: | No Doubt |
| Activision Product: | Band Hero |
| Deal Type: | Character Name and Likeness License re No Doubt |

## PROFESSIONAL SERVICES AND CHARACTER LICENSE AGREEMENT

This Professional Services and Character License Agreement (the "Agreement") is entered into between Activision Publishing, Inc., and its affiliates, with an address of 3100 Ocean Park Blvd., Santa Monica, CA 90405 (collectively, "Activision"), and No Doubt, a California Partnership, c/o Seth Lichtenstein, Golding, Hertz & Lichenstein 450 North Roxbury Drive, 8th Floor, Beverly Hills, CA 90210 ("Artist") dated as of May 21, 2009 (the "Effective Date").

### 1. GENERAL

1.1    Artist owns and controls the personality rights (name and likeness rights) to the musical artist professionally known as No Doubt, including the band name and the name and likeness rights to each of the individual band members (Gwen Stefani, Tom Dumont, Tony Kanal, and Adrian Young). It is specifically acknowledged and agreed that the rights granted herein relate solely to the group "No Doubt" and not the individual members' activities apart form the group.

1.2    This Agreement sets out the terms upon which Artist has agreed to grant to Activision certain rights to utilize Artist's name(s), likeness(es), logo(s),and associated trademark(s) and other related intellectual property rights (the "Licensed Property") and to provide to Activision certain production and marketing services in connection with Activision's "*Band Hero*" video game (the "Game").

### 2. PRODUCTION SERVICES

2.1    Artist shall provide the following services regarding the Game production (collectively, the "Services"):

    2.1.1    Artist to participate in one (1) day of Game production services at the offices of the developer of the Game, Neversoft, in Woodland Hills, or such other location in Los Angeles as mutually determined by the parties, for the purposes of photographing and scanning Artist's likeness, and capturing Artist's motion-capture data.

    2.1.2    At a mutually agreed time and location, Activision shall be permitted to film "behind-the-scenes/b-roll footage" and/or take publicity photos of Artist and have Artist answer pre-approved interview questions about the Game for marketing and PR purposes. The photographers/videographers and all footage and other representations and any use or exploitation thereof shall be subject to Artist prior written approval.

2.2    Activision acknowledges the completion of the foregoing.

### 3. MARKETING SERVICES

3.1    Subject to Artist's professional commitments, Artist shall participate in three (3) entertainment oriented, gaming enthusiast press or online media interviews (via phone, online, or in-person).

3.2    Artist shall, for the period Sept. 1, 2009 to Jan. 1, 2010 allow Band Hero promo materials approved by Artist to be placed on such of Artist's community website(s) as Artist shall determine.; The amount and size of such materials and the placement thereof within the applicable site(s) shall be determined by Artist.

3.3    Artist shall participate in either: (a) one (1) press day of no more than four (4) hours, in Los Angeles consisting of national broadcast television (e.g., morning shows, late-night shows, entertainment shows, etc.), radio call-ins, and/or phone or in-person interviews; or (b) one (1) Press Satellite Tour (up to 4 hours),

Character License Agreement
No Doubt

Page 1

TS

ACTIVISION,

Exhibit 1

Page 25

subject to mutual agreement on timing and location and with reasonable deference to No Doubt's scheduling needs and requirements.

3.4 Artist shall provide two (2) recorded video "shout-outs" (e.g., "Hi, this is No Doubt and we're in the new Band Hero game"), subject to Artist's scheduling demands and subject to Artist's review and approval of the contents of such "shout-outs".

3.5 Artist shall have approval rights over the press details for the marketing services set forth above (specific proposed shows, interviewer, etc.).

3.6 Activision shall pay for Artist's customary expenses related to the above marketing services, including but not limited to travel, hair, and makeup expenses. Any expenses to be reimbursed shall be subject to Activision's prior written approval, and upon request, Artist shall provide reasonable receipts or other proof of expenditure related to such expenses. In the event that Activision will not approve such customary expenses in advance, No Doubt shall have the option of not performing the applicable services.

## 4. MUSIC LICENSING

Activision shall use commercially reasonable efforts to license no more than three (3) Artist songs (master/composition) for incorporation and use in the Game. Artist shall have approval over the songs to be used, not to be unreasonably withheld. Activision shall be solely responsible for obtaining and paying for all necessary clearances and licenses, as well as any required third party approvals. Artist shall provide all reasonably requested assistance to Activision to facilitate music clearances and licensing of Artist's music for the Game.

## 5. GRANT OF RIGHTS; OWNERSHIP

5.1 Licensed Property. Artists grants to Activision the non-exclusive, worldwide right and license to use the Licensed Property (including Artist's likeness as provided by or approved by Artist) solely in the one (1) Game for all gaming platforms and formats, on the packaging for the Game, and in advertising, marketing, promotional and PR materials for the Game.

5.2 Ownership.

5.2.1 All digitized images and models, and all motion data shall be considered as a "work for hire" (as defined under the U.S. Copyright Laws) on behalf of Activision, and Activision shall own all rights thereto, provided that Activision's uses of such materials shall be subject to the terms hereof and limited to those uses permitted herein.

5.2.2 All b-roll footage and photographs of Artist taken during the Services shall be owned by Artist, subject to Activision's right to use the same in and in connection with the Game as set forth herein, and provided that (i) Activision may review and destroy any such materials that contain trade secret or other sensitive materials, (ii) Activision shall not be obligated to provide any clearances or licenses to any third party materials, and (iii) Artist shall not use any such materials without Activision's approval during a period of one (1) year from the Effective Date.

## 6. APPROVAL RIGHTS

6.1 Artist's likeness as implemented in the Game (the "Character Likeness"), any use of Artist's name and/or likeness other than in a "billing block" fashion on the back of the packaging for the Game, and the b-roll and photography or other representation of the Services or of Artist, shall be subject to Artist's prior written approval.

6.2 Activision shall submit each of the above (i.e., the Character Likeness, name uses, and b-roll and photography or other representation) to Artist for review and Artist shall have ten (10) business days to either approve or disapprove.

6.3 If Artist fails to either approve or disapprove a submission within such ten (10) business day period, Activision shall provide Artist notice of such failure and if Artist then fails to either approve or disapprove such submission within three (3) business days from Activision's notice, the submission shall be deemed approved.

6.4 Activision shall not be required to submit for approval uses of previously approved assets, provided such uses fall within the rights granted herein (e.g., using a previously approved Character Likeness depiction in multiple advertising materials).

Character License Agreement
No Doubt

Page 2

TS          ACTIVISION.

Exhibit 1
Page 26

**7. EXCLUSIVITY**

For a period of five (5) years from the Effective Date, Artist shall not license or otherwise authorize or permit any other party to use the Artist name, likeness, logos, or trademarks in or in connection with any other music-rhythm based videogame (including advertising or promotion related thereto). The foregoing shall not restrict (i) any of the members of No Doubt from any individual activity , or (ii) any music licensing, and the limited use of Artist's name where customary as part of credits related thereto.

**8. CONSIDERATION**

8.1   Fees. In consideration for the in-game character name and likeness rights, marketing services set forth herein, and the rights to the Licensed Property granted herein, Activision shall pay Artist an aggregate fee of

8.2   Game Copies. Upon commercial release of the Game, Activision shall provide Artist with ten (10) complimentary copies of the Game.

8.3   Most Favored Nations. The license fee set forth above shall be on a most favored nations basis with respect to any other artist granting comparable in-game name and likeness rights for the Game (or any prior Guitar Hero or Band Hero game). If any other artist receives any greater fee or other financial compensation or consideration for granting such in-game name and likeness rights, then Activision shall provide Artist such proportionally higher fee or compensation. The foregoing shall not apply to any band-featured in-game agreements (e.g., Guitar Hero Metallica, Guitar Hero Aerosmith).

8.4   Buy-Out Nature of Fees. The above fees shall be the total compensation payable to Artist for the Services and the rights granted herein, and shall be made on a one-time, complete buy-out basis. Artist shall not be entitled to royalties, re-use, public performance, or other fees or payments with regard to the Services and/or any permitted uses or exploitation set forth herein. Artist represents and warrants that Adist shall procure any required record label or other third party waiver and consent necessary to enter into this Agreement, and that in no event shall Activision be required to make any payments to any such label or third party regarding the Services and/or rights granted herein. The foregoing shall not apply to clearances, licenses, permissions or consents relating to rights in any musical compositions or master recordings, it being understood that Activision shall be solely responsible for obtaining and paying for any such, clearances, licenses, permissions and consents.

**9. REPRESENTATIONS, WARRANTIES AND INDEMNITY**

Each party represents and warrants to the other that each has the right and authority to enter into and perform their obligations under this Agreement, and/or to grant the rights granted hereunder. Activision and Artist shall hold harmless one another and their officers, directors, agents and employees (as applicable) from and against all claims, liabilities, damages and expenses (including reasonable outside attorneys' fees and costs) arising out of a breach of this Agreement or any representations or warranties contained herein. Which is the subject of a final adverse judgment or settled with the indemnitee's consent

**10. MISCELLANEOUS**

10.1   Artist's services under this Agreement are personal in nature, and Artist shall not, without Activision's prior written consent, assign or transfer any of its rights or obligations under this Agreement. Subject to the foregoing, this Agreement shall inure to the benefit of the parties' successors, transferees or assigns and shall be binding upon the parties' successors, transferees or assigns.

10.2   Nothing contained in this Agreement shall be deemed to constitute a partnership between or joint venture by the parties hereto, nor shall either party be deemed the agent of the other. Artist is an independent contractor and nothing in this Agreement shall be interpreted or construed to create or establish the relationship of employer and employee between Activision and Artist.

10.3   This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, thereby superseding all prior negotiations, preliminary agreements, correspondence or understandings, written or oral. No amendment or modification of this Agreement will be made except by an instrument in writing signed by both parties. If any provision of this Agreement is or becomes or is deemed invalid, illegal or unenforceable under the applicable laws or regulations of any jurisdiction, either such provision will be deemed amended to conform to such laws or regulations without materially altering the intentions of the parties and enforced accordingly or it shall be stricken and the remainder of this Agreement shall remain in full force and effect. The substantive laws of California shall apply to this Agreement, and the parties consent to the exclusive jurisdiction of the courts in Los Angeles County.

Character License Agreement
No Doubt

Page 3

TS

ACTIVISION.

Exhibit 1
Page 27

**AGREED TO BY:**

*ACTIVISION PUBLISHING, INC.*                    *NO DOUBT*

By:                                              By:

Name:   Greg Deutsch ·                           Name:   TONY KANAL

Title:   Sr. Vice President and General Counsel  Title:

Character License Agreement
No Doubt

Page 4

TS          ACTIVISION.

Exhibit 1
Page 28

## PROOF OF SERVICE
(CCP § § 1013a, 2015.5)

STATE OF CALIFORNIA          )
                                                  ) ss.
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is 865 SOUTH FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, CALIFORNIA 90017.

On December 3, 2009, I served the foregoing document described as **NOTICE OF REMOVAL OF ACTION FROM THE SUPERIOR COURT OF THE STATE OF CALIFORNIA TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. § 1441(b)(FEDERAL QUESTION)**  on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Bert H. Deixler, Esq.
Gil N. Peles, Esq.
Proskauer Rose LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206

___X___   **BY MAIL**

_____ I placed such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon full prepaid.

__X___ As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 3, 2009, at Los Angeles, California.

_____**STATE** I declare under penalty of perjury under the laws of the State of California that the above is true  and correct.

__X___**FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____**BETTY GOMEZ**_____

02416.22954/3211283.1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV09- 8872 SVW (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL
COPY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| NO DOUBT, a California Partnership, | ACTIVISION PUBLISHING, INC., a Delaware corporation, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Bert H. Deixler, Bar No. 70614<br><br>Proskauer Rose LLP<br>2049 Century Park East, 32nd Floor<br>Los Angeles, CA 90067-3206<br>310/557-2900 | Michael T. Zeller, Bar No. 196417<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 South Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br><br>213/443-3000 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Removal based on copyright preemption, 17 U.S.C. § 301.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

CV09- 8872

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? [X] No  [ ] Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case? [X] No  [ ] Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)     [ ] A. Arise from the same or closely related transactions, happenings, or events; or
     [ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or
     [ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
     [ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)
(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
     [ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
     [ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Michael T. Zeller_     Date December 2, 2009

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## PROOF OF SERVICE
(CCP § § 1013a, 2015.5)

STATE OF CALIFORNIA ) 
 ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is 865 SOUTH FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, CALIFORNIA 90017.

On December 3, 2009, I served the foregoing document described as **CIVIL COVER SHEET** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Bert H. Deixler, Esq.
Gil N. Peles, Esq.
Proskauer Rose LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206

___X___ **BY MAIL**

_____ I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon full prepaid.

___X___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 3, 2009, at Los Angeles, California.

_____ **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

___X___ **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**BETTY GOMEZ**
Type or Print Name

Signature

02416.22954/3211283.1