COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Michael T. Zeller (Bar No. 196417)
2    michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
4  Facsimile: (213) 443-3100

5  Attorneys for Defendant and
   Counterclaimant
6  Activision Publishing, Inc.

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     WESTERN DIVISION

11  NO DOUBT, a California Partnership,    CASE NO. CV09-8872 SW VBKx

12           Plaintiff and Counter-       **ACTIVISION'S ANSWER AND**
             defendant,                   **COUNTERCLAIMS; AND**

13     vs.                                **DEMAND FOR JURY TRIAL**

14  ACTIVISION PUBLISHING, INC., a        Trial Date:  None Set
   Delaware Corporation,

15           Defendant and Counter-
             claimant.

16

17

18

19

20

21

22

23

24

25

26

27

28

02416.22954/3219266.1

1   Defendant    and    Counterclaimant    Activision    Publishing,    Inc.
2   ("Activision") hereby answers Plaintiff's Complaint as follows:

3   1.   Answering Paragraph 1 of the Complaint, Activision admits that
4   Plaintiff has purported to sue for injunctive and other relief against the "Band Hero"
5   videogame that is part of Activision's flagship "Guitar Hero" videogame franchise,
6   denies the truth of the remaining allegations set forth in Paragraph 1 and specifically
7   denies any and all allegations of wrongdoing against Activision.

8   2.   Answering Paragraph 2 of the Complaint, Activision admits that
9   it created and owns the "Band Hero" videogame that is part of Activision's flagship
10  "Guitar Hero" videogame franchise, admits that Plaintiff's members' in-game
11  characters (or "avatars") which had been approved by Plaintiff are in "Band Hero"
12  pursuant to a fully paid license agreement with Plaintiff, admits that certain users of
13  "Band Hero" are able to "unlock" its members' in-game characters and can then
14  choose to play songs performed by other artists using "unlocked" characters as part
15  of their game-play, denies the truth of the remaining allegations set forth in
16  Paragraph 2 and specifically denies any and all allegations of wrongdoing against
17  Activision.

18  3.   Answering Paragraph 3 of the Complaint, Activision admits that
19  it created and owns the "Band Hero" videogame that is part of Activision's flagship
20  "Guitar Hero" videogame franchise, admits that avatars of Plaintiff's members
21  which had been approved by Plaintiff are in "Band Hero" pursuant to a fully paid
22  license agreement with Plaintiff, admits that certain users of "Band Hero" are able to
23  "unlock" its members' in-game characters and then can choose to play songs
24  performed by other artists using "unlocked" characters as part of the game-play,
25  admits that its copyright protected "Band Hero" videogame and its contents are
26  highly transformative, denies the truth of the remaining allegations set forth in
27  Paragraph 3 and specifically denies any and all allegations of wrongdoing against
28  Activision.

1        4.    Answering Paragraph 4 of the Complaint, Activision denies the
2    truth of the allegations set forth therein and specifically denies any and all
3    allegations of wrongdoing against Activision.

4        5.    Answering Paragraph 5 of the Complaint, Activision admits the
5    allegations set forth therein.

6        6.    Answering Paragraph 6 of the Complaint, Activision admits the
7    allegations set forth therein.

8        7.    Answering Paragraph 7 of the Complaint, Activision admits the
9    allegations set forth therein.

10       8.    Answering Paragraph 8 of the Complaint, Activision denies that
11   Plaintiff did not authorize or license the in-game characters of its members, states
12   that the parties' Agreement speaks for itself, denies any and all allegations of
13   wrongdoing against Activision and states that it is without knowledge or
14   information sufficient to form a belief as to the truth of the remaining allegations
15   therein and, on that basis, denies them.

16       9.    Answering Paragraph 9 of the Complaint, Activision admits that
17   it is a videogame publisher, admits that it is the creator and owner of the "Band
18   Hero" videogame, admits that its "Guitar Hero" franchise has been among the top
19   selling videogames, states that it has sold to date over 40 million units of "Guitar
20   Hero" videogames with revenues in excess of $2 billion, admits that the videogame
21   allows players to simulate performing in a rock band in time with popular songs
22   with a guitar-shaped controller and denies the truth of the remaining allegations in
23   Paragraph 9.

24       10.   Answering Paragraph 10 of the Complaint, Activision admits
25   that since the first version of the "Guitar Hero" videogames, going back as early as
26   2005, players have been able to "unlock" in-game characters in a variety of ways,
27   whereby users may use those in-game characters to play songs they choose once
28

ACTIVISION'S ANSWER AND COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL

1 | they are "unlocked" as part of the game-play, and denies the truth of the remaining
2 | allegations in Paragraph 10.

3 |      11.     Answering Paragraph 11 of the Complaint, Activision admits
4 | that the parties entered in a Professional Services and Character License Agreement
5 | dated as of May 21, 2009, a copy of which is attached hereto as Exhibit 1, states that
6 | the Agreement speaks for itself, denies the truth of the remaining allegations set
7 | forth in Paragraph 11 and specifically denies any and all allegations of wrongdoing
8 | against Activision.

9 |      12.     Answering Paragraph 12 of the Complaint, Activision admits
10 | that the parties entered in a Professional Services and Character License Agreement
11 | dated as of May 21, 2009, a copy of which is attached hereto as Exhibit 1, states that
12 | the Agreement speaks for itself, denies the truth of the remaining allegations set
13 | forth in Paragraph 12 and specifically denies any and all allegations of wrongdoing
14 | against Activision.

15 |      13.     Answering Paragraph 13 of the Complaint, Activision admits
16 | that the parties entered in a Professional Services and Character License Agreement
17 | dated as of May 21, 2009, a copy of which is attached hereto as Exhibit 1, states that
18 | the Agreement speaks for itself, denies the truth of the remaining allegations set
19 | forth in Paragraph 13 and specifically denies any and all allegations of wrongdoing
20 | against Activision.

21 |      14.     Answering Paragraph 14 of the Complaint, Activision admits
22 | that so their likenesses could be used to create their in-game characters, Plaintiff's
23 | members agreed to participate, and did participate, in "photographing and scanning
24 | Artist's likeness, and capturing Artist's motion-capture data" pursuant to the
25 | Professional Services and Character License Agreement dated as of May 21, 2009, a
26 | copy of which is attached hereto as Exhibit 1, and denies the truth of the remaining
27 | allegations set forth in Paragraph 14.

28 |

02416.22954/3219266.1

-4-

1   15. Answering Paragraph 15 of the Complaint, Activision admits

2 that the parties entered in a Professional Services and Character License Agreement

3 dated as of May 21, 2009, a copy of which is attached hereto as Exhibit 1, states that

4 the Agreement speaks for itself and denies the truth of the remaining allegations set

5 forth in Paragraph 15.

6   16. Answering Paragraph 16 of the Complaint, Activision admits

7 that Plaintiff's members' avatars which had been approved by Plaintiff are in "Band

8 Hero" pursuant to a fully paid license agreement with Plaintiff, admits that certain

9 users of "Band Hero" are able to "unlock" its members' in-game characters and then

10 can choose to play songs performed by other artists using "unlocked" characters and

11 denies the truth of the remaining allegations set forth in Paragraph 16.

12   17. Answering Paragraph 17 of the Complaint, Activision admits

13 that avatars of Plaintiff's members which had been approved by Plaintiff are in

14 "Band Hero" pursuant to a fully paid license agreement with Plaintiff, admits that

15 certain users of "Band Hero" are able to "unlock" its members' in-game characters

16 and then can choose to play songs performed by other artists using "unlocked"

17 characters and denies the truth of the remaining allegations set forth in Paragraph

18 17.

19   18. Answering Paragraph 18 of the Complaint, Activision admits

20 that avatars of Plaintiff's members which had been approved by Plaintiff are in

21 "Band Hero" pursuant to a license agreement with Plaintiff, admits that certain users

22 of "Band Hero" are able to "unlock" its members' in-game characters and then can

23 choose to play songs performed by other artists using "unlocked" characters and

24 denies the truth of the remaining allegations set forth in Paragraph 18.

25   19. Answering Paragraph 19 of the Complaint, Activision admits

26 that avatars of Plaintiff's members which had been approved by Plaintiff are in

27 "Band Hero" pursuant to a license agreement with Plaintiff, admits that certain users

28 of "Band Hero" are able to "unlock" its members' in-game characters and then can

1  choose to play songs performed by other artists using "unlocked" characters and

2  denies the truth of the remaining allegations set forth in Paragraph 19.

3      20.   Answering Paragraph 20 of the Complaint, Activision admits

4  that it has been publicly known that certain users of "Guitar Hero" videogames are

5  able to "unlock" in-game characters and then can choose to play songs performed by

6  other artists using "unlocked" characters as part of the game-play, states that the

7  Agreement between the parties speaks for itself, and denies the truth of the

8  remaining allegations set forth in Paragraph 20.

9      21.   Answering Paragraph 21 of the Complaint, Activision denies the

10  allegations set forth in Paragraph 21.

11      22.   Answering Paragraph 22 of the Complaint, Activision admits

12  that Plaintiff purports to quote certain lyrics from the song "Honky Tonk Women,"

13  admits that Plaintiff's members avatars which had been approved by Plaintiff are in

14  "Band Hero" pursuant to a fully paid license agreement with Plaintiff, admits that

15  certain users of "Band Hero" are able to "unlock" its members' in-game characters

16  and then can choose to play songs performed by other artists using "unlocked"

17  characters, admits that "Honky Tonk Women" is a song that is included in "Band

18  Hero," states that it is without knowledge or information sufficient to form a belief

19  as to the truth of the allegations whether Plaintiff's member's are "avid fans" of the

20  Rolling Stones, and denies the truth of the remaining allegations set forth in

21  Paragraph 22.

22      23.   Answering Paragraph 23 of the Complaint, Activision admits

23  that Plaintiff purports to quote certain lyrics from the song "Just A Girl," admits that

24  Plaintiff's members avatars which had been approved by Plaintiff are in "Band

25  Hero" pursuant to a fully paid license agreement with Plaintiff, admits that certain

26  users of "Band Hero" are able to "unlock" its members' in-game characters and then

27  can choose to play songs by Plaintiff and others using "unlocked" characters, admits

28  that "Just a Girl" is a song that is included in "Band Hero," states that it is without

1 knowledge or information sufficient to form a belief as to the truth of the allegations

2 relating to Tony Kanal's vocal duties, and denies the truth of the remaining

3 allegations set forth in Paragraph 23.

4        24.    Answering Paragraph 24 of the Complaint, Activision denies the

5 truth of the allegations set forth therein.

6        25.    Answering Paragraph 25 of the Complaint, Activision admits

7 that although it is possible to program a videogame whereby particular in-game

8 characters can only be selected when certain songs are played,   Plaintiff first

9 requested this only after the "Band Hero" programming was finalized, had been

10 submitted to all of the U.S. console manufacturers for approval and had been

11 approved for manufacture by most console manufacturers and denies the truth of the

12 remaining allegations set forth in Paragraph 25.

13        26.    Answering Paragraph 26 of the Complaint, Activision denies the

14 truth of the allegations therein.

15                    **FIRST CAUSE OF ACTION**

16        27.    Answering  Paragraph  27  of  the  Complaint,  Activision

17 incorporates by reference Paragraphs 1 through 26 of its Answer, as though fully set

18 forth herein.

19        28.    Answering Paragraph 28 of the Complaint, Activision denies the

20 truth of the allegations therein.  By way of further answer, Activision states that it

21 has been publicly known that certain users of "Guitar Hero" videogames are able to

22 "unlock" in-game characters and then can choose to play songs performed by other

23 artists using "unlocked" characters.

24        29.    Answering Paragraph 29 of the Complaint, Activision denies the

25 truth of the allegations therein.  By way of further answer, Activision states that it

26 has been publicly known that certain users of "Guitar Hero" videogames are able to

27 "unlock" in-game characters and then can choose to play songs performed by other

28 artists using "unlocked" characters.

1    30.    Answering Paragraph 30 of the Complaint, Activision denies the

2 truth of the allegations therein. By way of further answer, Activision states that it

3 has been publicly known that certain users of "Guitar Hero" videogames are able to

4 "unlock" in-game characters and then can choose to play songs performed by other

5 artists using "unlocked" characters.

6    31.    Answering Paragraph 31 of the Complaint, Activision denies the

7 truth of the allegations therein. By way of further answer, Activision states that it

8 has been publicly known that certain users of "Guitar Hero" videogames are able to

9 "unlock" in-game characters and then can choose to play songs performed by other

10 artists using "unlocked" characters.

11    32.    Answering Paragraph 32 of the Complaint, Activision denies the

12 truth of the allegations therein. By way of further answer, Activision states that it

13 has been publicly known that certain users of "Guitar Hero" videogames are able to

14 "unlock" in-game characters and then can choose to play songs performed by other

15 artists using "unlocked" characters.

16    33.    Answering Paragraph 33 of the Complaint, Activision denies the

17 truth of the allegations therein and specifically denies that Plaintiff is entitled to any

18 damages or any other relief.

19    34.    Answering Paragraph 34 of the Complaint, Activision denies the

20 truth of the allegations therein and specifically denies that Plaintiff is entitled to any

21 damages or any other relief.

22    **SECOND CAUSE OF ACTION**

23    35.    Answering Paragraph 35 of the Complaint, Activision

24 incorporates by reference Paragraphs 1 through 26 and Paragraphs 28 through 34 of

25 its Answer, as though fully set forth herein.

26    36.    Answering Paragraph 36 of the Complaint, Activision states that

27 it is without knowledge or information sufficient to form a belief as to the truth of

28 the remaining allegations therein and, on that basis, denies them.

1       37.   Answering Paragraph 37 of the Complaint, Activision denies the
2 truth of the allegations therein.

3       38.   Answering Paragraph 38 of the Complaint, denies the truth of the
4 allegations set forth in Paragraph 38.

5       39.   Answering Paragraph 39 of the Complaint, Activision denies the
6 truth of the allegations therein.

7       40.   Answering Paragraph 40 of the Complaint, Activision denies the
8 truth of the allegations therein and specifically denies that Plaintiff is entitled to
9 damages or any other relief.

10       41.   Answering Paragraph 41 of the Complaint, Activision denies the
11 truth of the allegations therein and specifically denies that Plaintiff is entitled to
12 damages or any other relief.

13       42.   Answering Paragraph 42 of the Complaint, Activision denies the
14 truth of the allegations therein and specifically denies that Plaintiff is entitled to
15 damages or any other relief.

16 **THIRD CAUSE OF ACTION**

17       43.   Answering Paragraph 43 of the Complaint, Activision
18 incorporates by reference Paragraphs 1 through 26, Paragraphs 28 through 34 and
19 Paragraphs 36 through 42 of its Answer, as though fully set forth herein.

20       44.   Answering Paragraph 44 of the Complaint, Activision denies the
21 truth of the allegations therein.

22       45.   Answering Paragraph 45 of the Complaint, Activision denies the
23 truth of the allegations therein

24       46.   Answering Paragraph 46 of the Complaint, Activision denies the
25 truth of the allegations therein and specifically denies that Plaintiff is entitled to
26 damages or any other relief.

27
28

ACTIVISION'S ANSWER AND COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL

1

### FOURTH CAUSE OF ACTION

2      47.    Answering   Paragraph   47   of   the   Complaint,   Activision
3 incorporates by reference Paragraphs 1 through 26, Paragraphs 28 through 34,
4 Paragraphs 36 through 42 and Paragraphs 44 through 46 of its Answer, as though
5 fully set forth herein.

6      48.    Answering Paragraph 48 of the Complaint, Activision denies the
7 truth of the allegations therein.

8      49.    Answering Paragraph 49 of the Complaint, Activision denies the
9 truth of the allegations therein.

10      50.    Answering Paragraph 50 of the Complaint, Activision denies the
11 truth of the allegations therein and specifically denies that Plaintiff is entitled to
12 damages or any other relief.

13      51.    Answering Paragraph 51 of the Complaint, Activision denies the
14 truth of the allegations therein and specifically denies that Plaintiff is entitled to any
15 relief.

16

### FIFTH CAUSE OF ACTION

17      52.    Answering   Paragraph   52   of   the   Complaint,   Activision
18 incorporates by reference Paragraphs 1 through 26, Paragraphs 28 through 34,
19 Paragraphs 36 through 42, Paragraphs 44 through 46 and Paragraph 48 through 51
20 of its Answer, as though fully set forth herein.

21      53.    Answering Paragraph 53 of the Complaint, Activision denies the
22 truth of the allegations therein and specifically denies that Plaintiff is entitled to any
23 relief.

24      54.    Answering Paragraph 54 of the Complaint, Activision denies the
25 truth of the allegations therein and specifically denies that Plaintiff is entitled to any
26 relief.

27

28

ACTIVISION'S ANSWER AND COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL

1    55.    Answering Paragraph 55 of the Complaint, Activision denies the
2  truth of the allegations therein and specifically denies that Plaintiff is entitled to any
3  relief.

4                               **SIXTH CAUSE OF ACTION**

5    56.    Answering   Paragraph   56   of   the   Complaint,   Activision
6  incorporates by reference Paragraphs 1 through 26, Paragraphs 28 through 34,
7  Paragraphs 36 through 42, Paragraphs 44 through 46, Paragraphs 48 through 51 and
8  Paragraphs 53 through 55 of its Answer, as though fully set forth herein.

9    57.    Answering Paragraph 57 of the Complaint, Activision denies the
10  truth of the allegations therein.

11    58.    Answering Paragraph 58 of the Complaint, Activision denies the
12  truth of the allegations therein.

13    59.    Answering Paragraph 59 of the Complaint, Activision denies the
14  truth of the allegations therein.

15    60.    Answering Paragraph 60 of the Complaint, Activision states that
16  the allegations therein purport to state a legal conclusion as to which no answer is
17  required but, to the extent an answer is necessary, Activision denies the truth of the
18  allegations therein and specifically denies that Plaintiff is entitled to or has satisfied
19  the requirements for rescission.

20                               **PRAYER FOR RELIEF**

21    61.    Answering the Prayer for Relief, Activision denies the truth of
22  the allegations therein and specifically denies that Plaintiff is entitled to damages or
23  any other relief.

24                               **GENERAL DENIAL**

25    Any allegations with reference to Activision that have not been
26  specifically admitted in the preceding paragraphs are hereby denied.

27

28

1

### AFFIRMATIVE DEFENSES

2    By alleging the Affirmative Defenses set forth below, Activision does
3  not agree or concede that it bears the burden of proof or the burden of persuasion on
4  any of these issues, whether in whole or in part.

5

### FIRST AFFIRMATIVE DEFENSE

6    The Complaint fails to state a claim upon which relief can be granted.

7

### SECOND AFFIRMATIVE DEFENSE

8    Plaintiff's claims are barred, either in whole or in part, by licenses
9  granted to Activision.

10

### THIRD AFFIRMATIVE DEFENSE

11    Plaintiff's claims are barred by the First Amendment to the United
12  States Constitution and by Article 1 § 2 of the California Constitution.

13

### FOURTH AFFIRMATIVE DEFENSE

14    Plaintiff's claims are preempted by the United States Copyright Act.

15

### FIFTH AFFIRMATIVE DEFENSE

16    Plaintiff lacks standing to assert the claims alleged in the Complaint
17  and otherwise lacks protectable rights asserted in this action.

18

### SIXTH AFFIRMATIVE DEFENSE

19    Plaintiff's claims are barred, either in whole or in part, by the doctrine
20  of waiver.

21

### SEVENTH AFFIRMATIVE DEFENSE

22    Plaintiff's claims are barred, either in whole or in part, by the doctrine
23  of acquiescence and consent.

24

### EIGHTH AFFIRMATIVE DEFENSE

25    Plaintiff's claims are barred, either in whole or in part, by the doctrine
26  of estoppel.

27

28

02416.22954/3219266.1

ACTIVISION'S ANSWER AND COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's request for relief, including without limitation as to its request for equitable relief, is barred, either in whole or in part, by the doctrine of laches.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, either in whole or in part, by the doctrine of unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were not caused by Activision and are not attributable to the acts or omissions of Activision.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate its damages, if any.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages are barred, in whole or in part, because Activision is entitled to offset from Plaintiff.

### FOURTEENTH AFFIRMATIVE DEFENSE

Any obligation owed by Activision to Plaintiff has been performed in full in the manner agreed by the parties.

### ADDITIONAL DEFENSES

Activision has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Activision reserves the right to amend this Answer to add, delete, or modify defenses based on legal theories which may or will be divulged through discovery, through change or clarification of the governing law, or through further legal analysis of Plaintiff's positions in this litigation.

1

## COUNTERCLAIMS

2

### Nature Of Action

3      1.     Activision is a leading international publisher of interactive
4  entertainment software products.  Among its many successful products, Activision
5  has marketed and sold videogames in the "Guitar Hero" franchise.    These
6  videogames, which allow users to emulate rock stars by using guitar-shaped and
7  other controllers to play in time to popular songs, have received considerable
8  acclaim from critics and consumers alike.  The "Guitar Hero" franchise also has
9  been phenomenally successful, with over 40 million units of the videogames sold to
10  date.

11      2.     Activision brings Counterclaims for No Doubt's unjustified
12  refusals and failures to honor its promises.  The members of No Doubt licensed their
13  publicity, trademark and other rights for use in the latest release in the "Guitar Hero"
14  franchise, known as "Band Hero."   No Doubt also agreed to provide services,
15  including marketing services, to promote the "Band Hero" videogame.  Even though
16  Activision fully paid No Doubt under the parties' contract, No Doubt failed and
17  refused to perform the services No Doubt had agreed to provide and otherwise
18  breached its agreement with Activision, including by refusing to perform
19  promotional services.   No Doubt furthermore has been unjustly enriched by its
20  wrongful conduct against Activision, including by retaining money paid to the band
21  for services it then refused to provide.

22      3.     As a result, Activision seeks compensation for the damages that
23  Activision has suffered and will continue to suffer as a consequence of No Doubt's
24  wrongful behavior.  No Doubt further has been unjustly enriched and should be
25  required to disgorge all benefits it wrongfully received.

26

27

28

02416.22954/3219266.1

**Parties**

4.    Activision is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Santa Monica, California.

5.    Upon information and belief, No Doubt is a partnership organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California.

**Jurisdiction and Venue**

6.    No Doubt is subject to the personal jurisdiction of this Court by virtue of its presence in the State of California and by virtue of its consent in the Agreement to the exclusive jurisdiction of the Courts situated in Los Angeles County, California. The subject matter jurisdiction of this Court is founded upon 28 U.S.C. § 1331 by virtue of No Doubt's assertion of claims preempted by the copyright laws of the United States, Title 17, United States Code, as well as upon principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.    Venue is proper under 28 U.S.C. § 1391(b), as No Doubt resides in this District and as a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

**Facts**

8.    Activision is the publisher of the "Band Hero" videogame, which is the latest installment in Activision's highly successful "Guitar Hero" videogame franchise.

9.    Activision's "Band Hero" videogame allows players to pretend that they are performing in a rock band in time with popular songs. Players choose among options such as character and whether to perform by singing, playing guitar, playing bass or playing drums. The character options in "Band Hero" include both fictional characters and avatars of real-life performers. All told, the "Band Hero" game disk features 65 songs (by many different artists) and numerous characters

1    (both fictional and real-life) to enhance the game-play experience. In certain game
2    modes, once the user chooses a character, mode of play and/or song, the user plays
3    as the selected character along with the song to win points. In the case of simulated
4    guitar play, for example, the user wins points by correctly timing the pressing of fret
5    buttons and a strum bar on a guitar-like controller. In the case of simulated vocal
6    play, the user accumulates points by singing into a microphone-like controller and
7    correctly matching his or her vocals to such characteristics of the song as pitch and
8    timing.

9            10.    Pursuant to the Agreement, a copy of which is attached hereto as
10   Exhibit 1 and incorporated herein by reference, the avatars of real-life performers in
11   "Band Hero" include members of No Doubt. Under the terms of the Agreement, the
12   members of No Doubt granted Activision a worldwide right and license to use,
13   among other properties, their likenesses and names for "Band Hero." Agreement, ¶
14   5.1. So that their likenesses could be used to create their in-game characters, among
15   other things, members of Plaintiff agreed to participate in production services "for
16   the purposes of photographing and scanning Artist's likeness, and capturing Artist's
17   motion-capture data." Agreement, ¶ 2.1.1. Pursuant to the Agreement, Plaintiff's
18   members participated in the photographing and scanning of their likenesses and in
19   the capturing of their performances for "Band Hero." Furthermore, under the
20   Agreement, Activision is the owner of "Band Hero," as well as "all digitized images
21   and models" made of Plaintiff's members and "all motion data" captured as part of
22   the production services. Agreement, ¶ 5.2.1.

23           11.    Under the Agreement, No Doubt further promised to provide
24   marketing and promotional services for "Band Hero." Agreement, ¶¶ 3.1-3.6.
25   These services that No Doubt agreed to provide included, without limitation, press
26   interviews and participation in video "shout-outs." Id. No Doubt also agreed to
27   approve promotional materials for "Band Hero." Id.

28

1    12.    Despite its obligations under the Agreement, and despite having

2  been paid by Activision, No Doubt failed and refused to fulfill its responsibilities

3  under the Agreement, without excuse or justification.

4                   **Claim for Relief -- Breach of Contract**

5    13.    Activision repeats and realleges each and every allegation set

6  forth in paragraphs 1 through 12, above, as though fully set forth at length.

7    14.    Activision fully paid No Doubt under the Agreement.    The

8  Agreement is a valid, enforceable contract, and Activision has performed each and

9  every term and condition set forth therein or otherwise was excused from

10 performance by virtue of No Doubt's conduct.

11    15.    Pursuant to the Agreement, and for good and valuable

12 consideration, No Doubt agreed that its members would provide services, including

13 marketing services, in connection with "Band Hero."    No Doubt nevertheless

14 materially breached the Agreement, including without limitation by failing and

15 refusing to provide marketing services and other promotional support for "Band

16 Hero" as required by the Agreement.

17    16.    As a consequence of No Doubt's breach, Activision has suffered

18 and will in the future continue to suffer damages in an amount to be proven at trial.

19                   **Second Claim for Relief -- Unjust Enrichment**

20    17.    Activision repeats and realleges each and every allegation set

21 forth in paragraphs 1 through 12, above, as though fully set forth at length

22    18.    In paying money to No Doubt, Activision conferred a benefit

23 upon No Doubt.    In addition, No Doubt obtained benefits from its inclusion in

24 Activision's "Band Hero" videogame.    No Doubt had knowledge of, and have

25 voluntarily accepted and retained, all such benefits.

26    19.    The circumstances are such that it would inequitable for No

27 Doubt to retain such benefits without paying the value thereof to Activision.

28

1      20.    Accordingly, in the alternative to the First Claim for Relief, No

2 Doubt has been unjustly enriched and should disgorge and pay to Activision all such

3 benefits.

### Prayer for Relief

5      WHEREFORE, Activision hereby respectfully requests that this Court:

6      a.    Enter judgment in favor of Activision and against No Doubt;

7      b.    Award Activision its damages, together with interest;

8      c.    Order No Doubt to disgorge all benefits, including payments,

9 received from Activision;

10      d.    Order No Doubt to pay Activision the full cost of this action and

11 Activision's reasonable attorneys' fees; and

12      e.    Award such other and further relief as this Court deems just and

13 proper.

14

15 DATED: December 2, 2009        QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP
16

17

18                          By  _Michael Zeller /s/_

19                              Michael T. Zeller
                                Attorneys for Defendant and Counter-
20                              Claimant Activision Publishing, Inc.

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Counterclaimant and defendant Activision Publishing, Inc. hereby
3  demands a trial by jury on all claims so triable.

4

5  DATED: December  2  , 2009          QUINN EMANUEL URQUHART OLIVER &
6                                      HEDGES, LLP

7

8                                      By _Michael  Zeller /Dub_____

9                                         Michael T. Zeller
10                                        Attorneys for Defendant and Counter-
                                          Claimant Activision Publishing, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1



3100 Ocean Park Boulevard
Santa Monica, California 90405
Tel: 310.255.2000
Fax: 310.255.2152
**www.activision.com**

| | |
|---|---|
| Party: | No Doubt |
| Activision Product: | Band Hero |
| Deal Type: | Character Name and Likeness License re No Doubt |

## PROFESSIONAL SERVICES AND CHARACTER LICENSE AGREEMENT

This Professional Services and Character License Agreement (the **"Agreement"**) is entered into between Activision Publishing, Inc., and its affiliates, with an address of 3100 Ocean Park Blvd., Santa Monica, CA 90405 (collectively, **"Activision"**), and No Doubt, a California Partnership, c/o Seth Lichtenstein, Goldring, Hertz & Lichenstein 450 North Roxbury Drive, 8th Floor, Beverly Hills, CA 90210 ("Artist") dated as of May 21, 2009 (the **"Effective Date"**).

### 1. GENERAL

1.1   Artist owns and controls the personality rights (name and likeness rights) to the musical artist professionally known as No Doubt, including the band name and the name and likeness rights to each of the individual band members (Gwen Stefani, Tom Dumont, Tony Kanal, and Adrian Young). It is specifically acknowledged and agreed that the rights granted herein relate solely to the group "No Doubt" and not the individual members' activities apart form the group.

1.2   This Agreement sets out the terms upon which Artist has agreed to grant to Activision certain rights to utilize Artist's name(s), likeness(es), logo(s),and associated trademark(s) and other related intellectual property rights (the **"Licensed Property"**) and to provide to Activision certain production and marketing services in connection with Activision's **"Band Hero"** video game (the **"Game"**).

### 2. PRODUCTION SERVICES

2.1   Artist shall provide the following services regarding the Game production (collectively, the **"Services"**):

2.1.1   Artist to participate in one (1) day of Game production services at the offices of the developer of the Game, Neversoft, in Woodland Hills, or such other location in Los Angeles as mutually determined by the parties, for the purposes of photographing and scanning Artist's likeness, and capturing Artist's motion-capture data.

2.1.2   At a mutually agreed time and location, Activision shall be permitted to film "behind-the-scenes/b-roll footage" and/or take publicity photos of Artist and have Artist answer pre-approved interview questions about the Game for marketing and PR purposes. The photographers/videographers and all footage and other representations and any use or exploitation thereof shall be subject to Artist prior written approval.

2.2   Activision acknowledges the completion of the foregoing.

### 3. MARKETING SERVICES

3.1   Subject to Artist's professional commitments, Artist shall participate in three (3) entertainment oriented, gaming enthusiast press or online media interviews (via phone, online, or in-person).

3.2   Artist shall, for the period Sept. 1, 2009 to Jan. 1, 2010 allow Band Hero promo materials approved by Artist to be placed on such of Artist's community website(s) as Artist shall determine.; The amount and size of such materials and the placement thereof within the applicable site(s) shall be determined by Artist.

3.3   Artist shall participate in either: (a) one (1) press day of no more than four (4) hours, in Los Angeles consisting of national broadcast television (e.g., morning shows, late-night shows, entertainment shows, etc.), radio call-ins, and/or phone or in-person interviews; or (b) one (1) Press Satellite Tour (up to 4 hours),

Exhibit 1

Page 20

subject to mutual agreement on timing and location and with reasonable deference to No Doubt's scheduling needs and requirements.

3.4    Artist shall provide two (2) recorded video "shout-outs" (e.g., "Hi, this is No Doubt and we're in the new Band Hero game"), subject to Artist's scheduling demands and subject to Artist's review and approval of the contents of such "shout-outs".

3.5    Artist shall have approval rights over the press details for the marketing services set forth above (specific proposed shows, interviewer, etc.).

3.6    Activision shall pay for Artist's customary expenses related to the above marketing services, including but not limited to travel, hair, and makeup expenses. Any expenses to be reimbursed shall be subject to Activision's prior written approval, and upon request, Artist shall provide reasonable receipts or other proof of expenditure related to such expenses. In the event that Activision will not approve such customary expenses in advance, No Doubt shall have the option of not performing the applicable services.

**4. MUSIC LICENSING**

Activision shall use commercially reasonable efforts to license no more than three (3) Artist songs (master/composition) for incorporation and use in the Game. Artist shall have approval over the songs to be used, not to be unreasonably withheld. Activision shall be solely responsible for obtaining and paying for all necessary clearances and licenses, as well as any required third party approvals. Artist shall provide all reasonably requested assistance to Activision to facilitate music clearances and licensing of Artist's music for the Game.

**5. GRANT OF RIGHTS; OWNERSHIP**

5.1    Licensed Property. Artists grants to Activision the non-exclusive, worldwide right and license to use the Licensed Property (including Artist's likeness as provided by or approved by Artist) solely in the one (1) Game for all gaming platforms and formats, on the packaging for the Game, and in advertising, marketing, promotional and PR materials for the Game.

5.2    Ownership.

    5.2.1    All digitized images and models, and all motion data shall be considered as a "work for hire" (as defined under the U.S. Copyright Laws) on behalf of Activision, and Activision shall own all rights thereto, provided that Activision's uses of such materials shall be subject to the terms hereof and limited to those uses permitted herein.

    5.2.2    All b-roll footage and photographs of Artist taken during the Services shall be owned by Artist, subject to Activision's right to use the same in and in connection with the Game as set forth herein, and provided that (i) Activision may review and destroy any such materials that contain trade secret or other sensitive materials, (ii) Activision shall not be obligated to provide any clearances or licenses to any third party materials, and (iii) Artist shall not use any such materials without Activision's approval during a period of one (1) year from the Effective Date.

**6. APPROVAL RIGHTS**

6.1    Artist's likeness as implemented in the Game (the "Character Likeness"), any use of Artist's name and/or likeness other than in a "billing block" fashion on the back of the packaging for the Game, and the b-roll and photography or other representation of the Services or of Artist, shall be subject to Artist's prior written approval.

6.2    Activision shall submit each of the above (i.e., the Character Likeness, name uses, and b-roll and photography or other representation) to Artist for review and Artist shall have ten (10) business days to either approve or disapprove.

6.3    If Artist fails to either approve or disapprove a submission within such ten (10) business day period, Activision shall provide Artist notice of such failure and if Artist then fails to either approve or disapprove such submission within three (3) business days from Activision's notice, the submission shall be deemed approved.

6.4    Activision shall not be required to submit for approval uses of previously approved assets, provided such uses fall within the rights granted herein (e.g., using a previously approved Character Likeness depiction in multiple advertising materials).

7. **EXCLUSIVITY**

For a period of five (5) years from the Effective Date, Artist shall not license or otherwise authorize or permit any other party to use the Artist name, likeness, logos, or trademarks in or in connection with any other music-rhythm based videogame (including advertising or promotion related thereto). The foregoing shall not restrict: (i) any of the members of No Doubt from any individual activity , or (ii) any music licensing, and the limited use of Artist's name where customary as part of credits related thereto.

8. **CONSIDERATION**

8.1     Fees. In consideration for the in-game character name and likeness rights, marketing services set forth herein. and the rights to the Licensed Property granted herein, Activision shall pay Artist an aggregate fee of

REDACTED

8.2     Game Copies. Upon commercial release of the Game, Activision shall provide Artist with ten (10) complimentary copies of the Game.

8.3

# REDACTED

8.4     Buy-Out Nature of Fees. The above fees shall be the total compensation payable to Artist for the Services and the rights granted herein, and shall be made on a one-time, complete buy-out basis. Artist shall not be entitled to royalties, re-use, public performance, or other fees or payments with regard to the Services and/or any permitted uses or exploitation set forth herein. Artist represents and warrants that Artist shall procure any required record label or other third party waiver and consent necessary to enter into this Agreement, and that in no event shall Activision be required to make any payments to any such label or third party regarding the Services and/or rights granted herein. The foregoing shall not apply to clearances, licenses, permissions or consents relating to rights in any musical compositions or master recordings, it being understood that Activision shall be solely responsible for obtaining and paying for any such, clearances, licenses, permissions and consents.

9. **REPRESENTATIONS, WARRANTIES AND INDEMNITY**

Each party represents and warrants to the other that each has the right and authority to enter into and perform their obligations under this Agreement, and/or to grant the rights granted hereunder. Activision and Artist shall hold harmless one another and their officers, directors, agents and employees (as applicable) from and against all claims, liabilities, damages and expenses (including reasonable outside attorneys' fees and costs) arising out of a breach of this Agreement or any representations or warranties contained herein. Which is the subject of a final adverse judgment or settled with the indemnitee's consent

10. **MISCELLANEOUS**

10.1     Artist's services under this Agreement are personal in nature, and Artist shall not, without Activision's prior written consent, assign or transfer any of its rights or obligations under this Agreement. Subject to the foregoing, this Agreement shall inure to the benefit of the parties' successors, transferees or assigns and shall be binding upon the parties' successors, transferees or assigns.

10.2     Nothing contained in this Agreement shall be deemed to constitute a partnership between or joint venture by the parties hereto, nor shall either party be deemed the agent of the other. Artist is an independent contractor and nothing in this Agreement shall be interpreted or construed to create or establish the relationship of employer and employee between Activision and Artist.

10.3     This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, thereby superseding all prior negotiations, preliminary agreements, correspondence or understandings, written or oral. No amendment or modification of this Agreement will be made except by an instrument in writing signed by both parties. If any provision of this Agreement is or becomes or is deemed invalid, illegal or unenforceable under the applicable laws or regulations of any jurisdiction, either such provision will be deemed amended to conform to such laws or regulations without materially altering the intentions of the parties and enforced accordingly or it shall be stricken and the remainder of this Agreement shall remain in full force and effect. The substantive laws of California shall apply to this Agreement, and the parties consent to the exclusive jurisdiction of the courts in Los Angeles County.

**AGREED TO BY:**

*ACTIVISION PUBLISHING, INC.*

By: _____

Name:   Greg Deutsch

Title:    Sr. Vice President and General Counsel

*NO DOUBT*

By: _____

Name: _____ TONY KANAL _____

Title: _____

**PROOF OF SERVICE**
(CCP § § 1013a, 2015.5)

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is 865 SOUTH FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, CALIFORNIA 90017.

On December 3, 2009, I served the foregoing document described as **ACTIVISION'S ANSWER AND COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Bert H. Deixler, Esq.
Gil N. Peles, Esq.
Proskauer Rose LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206

_X___ **BY MAIL**

_____ I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon full prepaid.

_X___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 3, 2009, at Los Angeles, California.

_____**STATE** I declare under penalty of perjury under the laws of the State of California that the above is true  and correct.

_X___ **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**BETTY GOMEZ**
Type or Print Name

Signature

02416.22954/3211283.1